UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| REVA DAWN JANIS-BAUER,<br><br>Movant,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | 4:20-CV-04053-KES<br><br><br>REPORT AND RECOMMENDATION |

## INTRODUCTION

Pending before the court is the *pro se* motion by movant Reva Dawn Janis-Bauer seeking to vacate, set aside, or correct her sentence pursuant to U.S.C. § 2255. See Docket No. 1.[1] The respondent United States of America ("government"), has filed a motion to dismiss Ms. Janis-Bauer's motion without holding an evidentiary hearing. See Docket No. 16. Ms. Janis-Bauer resists the motion. See Docket No. 20. This matter was referred to this magistrate judge for a recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and the October 16, 2014, standing order of the Honorable Karen E. Schreier, United States District Judge. For the reasons discussed below, the court recommends granting the government's motion in its entirety.

---

[1] In this opinion, the court refers to documents on file in Ms. Janis-Bauer's § 2255 file by citing the docket number. Documents filed in Ms. Janis-Bauer's underlying criminal case, United States v. Janis-Bauer, 4:18-cr-40098-KES-1 (D.S.D.), are referred to by citing the docket number from the criminal file preceded by "CR."

## FACTS

**A.    Underlying Criminal Case**

**1.    Preliminary Proceedings**

Ms. Janis-Bauer and her co-defendant, Phillip Steele, were first indicted on July 10, 2018, and charged with conspiracy to distribute 500 grams or more of a mixture containing methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846.  See CR Docket No. 1.  The same day, the undersigned issued a warrant for her arrest.  CR Docket No. 4.  At that time, Ms. Janis-Bauer was in custody of Brule County, South Dakota, and a writ of habeas corpus ad prosequendum was issued to deliver her into the custody of the United States Marshals Service ("USMS").  CR Docket No. 6.

An initial appearance, arraignment and bond hearing were held before this court on July 19, 2018, at which the undersigned appointed attorney Ashley M. Miles-Holtz to represent Ms. Janis-Bauer.  CR Docket Nos. 15 & 18. This court ordered Ms. Janis-Bauer to be detained in the custody of the USMS.  CR Docket No. 20.  On August 7, 2018, a grand jury returned a superseding indictment as to Ms. Janis-Bauer, again charging her with violating 21 U.S.C. §§ 841(a)(1) and 846.  CR Docket No. 46. On September 27, 2018, attorney D. Sonny Walter entered his appearance as retained counsel on behalf of Ms. Janis-Bauer.  CR Docket No. 54.

**2.    Plea Agreement**

On February 19, 2019, a plea agreement signed by Mr. Walter, Ms. Janis-Bauer, and government counsel was filed with the court.  CR Docket No. 70.  Under the terms of that agreement, Ms. Janis-Bauer agreed to plead

guilty to the superseding indictment filed against her.  CR Docket No. 70 at

p. 2, ¶ C.  The plea agreement advised the sentencing window for the charge to

which Ms. Janis-Bauer was agreeing to plead guilty was a mandatory

minimum of 10 years in prison and a maximum term of life in prison.  Id.

      In return for Ms. Janis-Bauer's plea, the government agreed it would

recommend she receive a three-point downward adjustment to her offense level

under the United States Sentencing Guidelines ("USSG") for accepting

responsibility.  Id. at pp. 3-4, ¶¶ E & F.  The plea agreement left both parties

free to recommend whatever sentence each felt was appropriate.  Id. at p. 4,

¶ G.

      Under the plea agreement, Ms. Janis-Bauer gave up all defenses and

waived her right to appeal any non-jurisdictional issue.  Id. at p. 8, ¶ O.

Excepted from the appeal waiver was any decision by the sentencing court to

impose an upward departure or variance from the USSG.  Id.

      The plea agreement was accompanied by a factual basis statement, also

signed by government counsel, Mr. Walter and Ms. Janis-Bauer.  CR Docket

No. 71.  In that document, Ms. Janis-Bauer stated that she, along with at least

one other person, distributed 500 grams or more of a mixture containing

methamphetamine from an unknown date to about June 1, 2018, in the

District of South Dakota.  Id. at p. 1.  She stated that she voluntarily joined the

conspiracy.  Id.

██████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

### 3.    Change of Plea Hearing

A change of plea hearing was held on February 22, 2019.  See CR Docket No. 130.  At the beginning of the hearing, Ms. Janis-Bauer was placed under oath.  Id. at p. 2.  All the following testimony from her was given under oath.

Ms. Janis-Bauer testified that she understood she was under oath to tell the truth.  Id.  She stated she understood that, if she gave false information, the government could charge her with perjury or making a false statement.  Id.

Ms. Janis-Bauer told the court she was then 45 years old and had obtained her General Equivalency Diploma.  Id. at p. 3.  Ms. Janis-Bauer told the court she had not recently been treated for any mental illness or addiction to narcotics.  Id.  Ms. Janis-Bauer told the court she was not then under the influence of any alcohol or drugs.  Id.

Ms. Janis-Bauer acknowledged having received a copy of the superseding indictment and having had an opportunity to discuss it and the case generally with her attorney.  Id.  Ms. Janis-Bauer testified under oath that she was fully satisfied with Mr. Walter's advice, counsel, and representation in her case.  Id.

Ms. Janis-Bauer told the court she had read the plea agreement and had an opportunity to discuss it with her attorney.  Id. at pp. 3-4.  She denied that any side promises had been made to entice her to sign the agreement.  Id. at p. 4.  She told the court she understood the terms of the plea agreement and the plea agreement supplement.  Id.  Ms. Janis-Bauer told the court no one had made any promise or assurance that was not written down in the plea agreement and that no one had threatened her or attempted to force her to sign the plea agreement.  Id. at pp. 4-5.  s

The court specifically warned Ms. Janis-Bauer that it might sentence her more severely than she anticipated and would not, because of that, allow Ms. Janis-Bauer to withdraw her guilty plea.  Id.  Ms. Janis-Bauer stated that she understood this.  Id. at p. 4.  Mr. Walter told the court he had conveyed all formal plea offers to Ms. Janis-Bauer.  Id. at p. 5.  Ms. Janis-Bauer said she was pleading guilty of her own free will because she was guilty.  Id.

The court advised Ms. Janis-Bauer that the applicable mandatory minimum sentence was ten years' imprisonment and the maximum sentence was life in prison.  Id.  Ms. Janis-Bauer stated she understood this.  Id.  The court further informed Ms. Janis-Bauer that the first thing the court would do is look at her advisory sentencing range under the USSG.  Id.  Ms. Janis-Bauer

told the court she and her counsel had discussed what counsel thought
Ms. Janis-Bauer's USSG range would be.  Id.

The court specifically told Ms. Janis-Bauer that it could not tell her at
that time what her USSG range might be at sentencing.  Id. at 7.  The court
said Ms. Janis-Bauer's presentence investigation report ("PSR") would have to
be written first and the court would then have to resolve any objections to the
PSR before finalizing what Ms. Janis-Bauer's sentencing range would be.  Id.
The court specifically told Ms. Janis-Bauer that the final USSG range might be
different from the estimated range counsel gave her.  Id.  Ms. Janis-Bauer
indicated she understood this.  Id.

The court then told Ms. Janis-Bauer that it had the power to impose a
sentence that was either more than or less than the USSG range.  Id.
Ms. Janis-Bauer stated she understood this.  Id.

The court informed Ms. Janis-Bauer that, under the terms of the plea
agreement, she had waived or given up her right to appeal all issues except the
issue of whether the court had jurisdiction or the issue of an upward departure
or variance at sentencing.  Id. at pp. 7-8.  Ms. Janis-Bauer stated she
understood this.  Id. at p. 8.  The court told Ms. Janis-Bauer that, even though
she had given up the right to appeal, the government could still appeal.  Id.
Ms. Janis-Bauer stated she understood.  Id.

The court told Ms. Janis-Bauer she could continue on with her not guilty
plea and have a jury trial to determine her guilt or innocence.  Id. at p. 8.  The
court informed Ms. Janis-Bauer that, if she opted to have a trial, the court

would tell the jury Ms. Janis-Bauer was presumed innocent and that it was the government's burden to prove her guilt beyond a reasonable doubt.  Id.  The court told Ms. Janis-Bauer she had the right to be represented by a lawyer at trial and at every other stage of the proceeding and that one would be appointed for her if necessary.  Id.  The court told Ms. Janis-Bauer that, at trial, she would have the right to see and hear all the witnesses who testified and she could have them cross-examined on her behalf.  Id.

The court told Ms. Janis-Bauer she would have the right not to testify at trial unless she voluntarily gave up that right.  Id.  The court told Ms. Janis-Bauer she could avail herself of the court's subpoena power so that any witnesses she wanted to call would come to the trial.  Id.  The court informed Ms. Janis-Bauer that, if she elected not to put on any evidence or not to testify, the court would tell the jury they could not use those facts against her and the burden was on the government to prove guilt beyond a reasonable doubt.  Id. at p. 9.

The court told Ms. Janis-Bauer that, if she entered a plea of guilty, there would not be a trial and she would be giving up all the rights the court just told her about.  Id.  Ms. Janis-Bauer indicated she understood.  Id.

The court explained that, at a trial, the government would have to prove all the essential elements of the crime.  Id.  That is, the government would have to prove that, starting on an unknown date and continuing until on or about June 1, 2018, in the District of South Dakota, Ms. Janis-Bauer, along with one or more other persons, intentionally and voluntarily reached an agreement or

came to an understanding to distribute 500 grams or more of a mixture or substance containing methamphetamine.  Id.  Ms. Janis-Bauer stated she understood that was what she was charged with and that was what the government would have to prove if she went to trial.  Id. at pp. 9-10.

The court then asked if Ms. Janis-Bauer had read the factual basis statement and whether she agreed that statement told the truth about what happened in her case.  Id. at p. 10.  Ms. Janis-Bauer responded, "[y]es."  Id.  The court then engaged Ms. Janis-Bauer in a colloquy, wherein the court ascertained what the conspiracy to distribute methamphetamine was.  Id. at pp. 10-11.  Ms. Janis-Bauer told the court that she and Mr. Steele went to Colorado to pick up methamphetamine and, when they were on their way back to South Dakota, were stopped and the drugs were located by police.  Id.  Ms. Janis-Bauer stated that she and Mr. Steele planned to sell the drugs when they got back to South Dakota.  Id. at p. 11.  With that information, the court found the factual basis sufficed to support Ms. Janis-Bauer's plea.  Id.

The court then asked Ms. Janis-Bauer what her plea as to the superseding indictment, which charged her with conspiracy to distribute a controlled substance, was.  Id. at p. 12.  Ms. Janis-Bauer replied, "[g]uilty."  Id.  The court then made the following findings:

> It is the finding of the court in the case of United States v. Reva Dawn Janis-Bauer that the defendant is fully competent and capable of entering an informed plea, that she is aware of the nature of the charges and the consequences of the plea, and that the plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense.  The plea is, therefore, accepted, and the defendant is now adjudged guilty of the offense.

Id. at pp. 12-13.

The court then explained to Ms. Janis-Bauer what would happen with her PSR.  Id. at p. 13.  The court explained that, after Ms. Janis-Bauer was interviewed by the probation officer, her attorney would get a copy of the draft PSR and review it with her.  Id.  The court told Ms. Janis-Bauer, "[y]ou should read it carefully and let him know if there are any mistakes or errors in the report because he can either ask to have changes made to the report or he can file formal objections to the report."  Id.

**4.    The PSR**

A draft PSR was prepared.  It calculated Ms. Janis-Bauer's advisory USSG range as follows:

| | |
|---|---|
| Base offense level | 32 |
| Adjustment for dangerous weapon possession | +2 |
| Adjustment for accepting responsibility | -3 |
| **Total Offense Level** | **31** |

See CR Docket No. 83 at p. 7. The base offense level was calculated based upon USSG § 2D1.1(c)(4), which provides that an offense involving at least 1.5 kilograms, but less than 5 kilograms, of methamphetamine has a base offense level of 32. Id. at p. 7, ¶ 23.

The PSR found that Ms. Janis-Bauer's extensive criminal history yielded a criminal history score of 23, placing her in category VI of the USSG. Id. at pp. 8-15, ¶¶ 35-53, 55-56. The PSR also stated that the statutory minimum term of imprisonment for Ms. Janis-Bauer is 10 years, and the maximum term is life. Id. at p. 20, ¶ 95. Based on a total offense level of 31 and a criminal history category of VI, the PSR established an advisory USSG range for Ms. Janis-Bauer of 188 to 235 months. Id. at p. 20, ¶ 96. The PSR identified no grounds for either an upward or a downward departure from this range. Id. at p. 22, ¶ 111.

The PSR discussed Ms. Janis-Bauer's mental and emotional health. According to Ms. Janis-Bauer's self-reporting, she was admitted to the Human Services Center in Yankton, SD in March 2005 after her husband died and she began experiencing symptoms related to depression. Id. at p. 18, ¶ 77. While in the facility, Ms. Janis-Bauer was prescribed medications to treat her symptoms of depression. Id. She was discharged about one month later and reportedly stopped taking the medications around one year later. Id. According to the PSR, Ms. Janis-Bauer did not report participating in any kind of mental health counseling since that time. Id. The PSR also extensively

discussed Ms. Janis-Bauer's history of substance abuse.  Id. at pp. 18-19,

¶¶ 78-84.

An amended draft PSR was prepared.  It calculated Ms. Janis-Bauer's

advisory USSG range as follows:

| | |
|---|---|
| Base offense level | 34 |
| Adjustment for dangerous weapon possession | +2 |
| Adjustment for accepting responsibility | <u>-3</u> |
| **Total Offense Level** | **<u>33</u>** |

See CR Docket No. 84 at 7.  The increase in base offence level from 32 to 34

was based upon USSG § 2D1.1(c)(3), which provides that an offense involving

at least 10 kilograms, but less than 30 kilograms, of converted drug weight has

a base offense of 34.  Id. at p. 7, ¶ 23.  The amended PSR used a converted

drug weight to assess base offense level because a sample of

methamphetamine attributable to Ms. Janis-Bauer tested 98% pure, meaning

a portion of meth attributable to Ms. Janis-Bauer were categorized as

methamphetamine (actual) instead of a mixture or substance containing

methamphetamine.  Id. at p. 6, ¶ 16.  When two or more different drugs are

known, the USSG instructs that all drugs shall be calculated to their converted

drug weight to determine the total quantity of drugs.  Id. at p. 6, ¶ 17.

Like the initial draft PSR, the amended draft PSR found that Ms. Janis-

Bauer's extensive criminal history yielded a criminal history score of 23,

placing her in category VI of the USSG.  Id. at pp. 8-15, ¶¶ 35-53, 55-56.  Like

the initial draft PSR, the amended draft PSR also stated that the statutory

minimum term of imprisonment for Ms. Janis-Bauer is 10 years, and the maximum term is life.  Id. at p. 20, ¶ 95.  Based on a total offense level of 33 and a criminal history category of VI, the amended PSR established an advisory USSG range for Ms. Janis-Bauer of 235 to 293 months.  Id. at p. 21, ¶ 96.  The amended PSR also identified no grounds for either an upward or a downward departure from this range.  Id. at p. 22, ¶ 111.

Mr. Walter filed an objection on Ms. Janis-Bauer's behalf to the amended PSR's quantification of the drugs attributable to Ms. Janis-Bauer.  See CR Docket No. 86.  Mr. Walter objected to paragraphs 16, 17, 23, 28, 32 and 96 and asserted that the drugs should have been quantified according to their mixture weight, not their converted weight, for a base offense level of 32.  Id at p. 1.  Mr. Walter asserted the government could not use the converted weight because, at the time Ms. Janis-Bauer entered her guilty plea, the government had not tested or indicated they planned to test any of the seized methamphetamine, and Ms. Janis-Bauer had not made any admissions or statements about the purity of the drugs.  Id. at pp. 1-2.  Because it was not until after Ms. Janis-Bauer entered a plea of guilty to distributing 500 grams or more of a "mixture" and substance containing methamphetamine that the government tested the substance, Mr. Walter argued that the government breached the plea agreement.  Id. at p. 2.  Therefore, Mr. Walter argued, the government should be held to the plea agreement and Ms. Janis-Bauer should be sentenced according to the mixture quantity and not the converted quantity.  Id.  Lastly, Mr. Walter argued that the government had further breached the

plea agreement by requesting a sentence above the mixture amount, and due process required the government to honor the plea agreement.  Id.

In an addendum to the final PSR, the PSR author rejected Mr. Walter's objection and explained why.  See CR Docket No. 89.  The author first addressed whether the PSR's quantification according to converted weight was proper.  Quoting in block United States v. Fairchild, 189 F.3d 769, 778 (8th Cir. 1999) (citing United States v. Beltran, 122 F.3d 1156, 1159 (8th Cir. 1997)), the author explained that "[t]he [USSG] specifically directs district courts to use the [quantification] method that results in the greatest offense level for the defendant."  Id. at p. 2.  "In the case of a mixture or substance containing . . . methamphetamine, use the offense level determined by the entire weight of the mixture or the substance, or the offense level determined by the weight of the . . . methamphetamine (actual), whichever is greater."  Fairchild, 189 F3d at 778-79 (quoting USSG § 2D1.1(c)).  Methamphetamine, unlike most controlled substances, is to be quantified based on purity, using either the weight of a mixture containing the drug or the weight of the pure drug itself contained within the mixture, whichever yields the greater offense level.  See USSG § 2D1.1, Notes to Drug Quantity Table (B).  The author concluded that the PSR correctly calculated the drug quantities attributed to Ms. Janis-Bauer by considering (i) the mixture or substance containing methamphetamine and (ii) methamphetamine (actual), according to their converted drug weight.  See CR Docket No. 89 at p. 3.

13

The author discussed the second issue raised in Mr. Walter's objection: whether the government breached the plea agreement by recommending a higher sentence in the amended PSR.  Id. at p. 3.  In rejecting Mr. Walter's argument, the author noted that Ms. Janis-Bauer was indicted on the charge of distributing 500 grams or more of a substance containing methamphetamine and quoted the Factual Basis Statement that accompanied the plea agreement (CR Docket No. 71):

> The parties submit that the foregoing statement of facts is not intended to be a complete description of the offense or the defendant's involvement in it.  Instead, the statement is offered for the limited purpose of satisfying the requirements of Fed. R. Crim. P. 11(b)(3).  The parties understanding that additional information relevant to sentencing, including additional drug quantities, may be developed and attributed to the defendant for sentencing purposes.

CR Docket No. 89 at p. 3.  Therefore, the author concluded that the offense level calculation in the amended PSR was derived from evidence as expressly contemplated by the Factual Basis Statement, which was signed by government counsel, Mr. Walter, and Ms. Janis-Bauer.  Id.  The final PSR contained the same base offense level and total offense level as the amended draft PSR.  CR Docket No. 88 at p. 7, ¶ 23.  It also contained the details from Ms. Janis-Bauer's self-reported mental and emotional health and substance abuse histories.  Id. at pp. 18-19, ¶¶ 77-84.

Mr. Walter also filed a motion for a downward departure.  See CR Docket No. 85.  In the motion, Mr. Walter argued that a downward variance was warranted under the factors set out in 18 U.S.C. § 3553(a) as discussed in a June 15, 2017, memorandum explaining policy disagreement with

14

methamphetamine sentencing guidelines written by Chief Judge B. Lynn
Winmill of the United States District Court for the District of Idaho in United
States v. Delozier, No. 4:16-cr-00283-BLW.  CR Docket No. 85-1.  In the
memorandum, Chief Judge Winmill commented that, in methamphetamine
cases, sentencing based on the amount of methamphetamine (actual) instead
of the amount of methamphetamine mixture can frustrate (i) "the need to avoid
unwarranted sentence disparities among defendants with similar records who
have been found guilty of similar conduct" and (ii) "the need for the sentence
imposed . . . to reflect the seriousness of the offense."  See CR Docket No. 85-1
at p. 8 (quoting 18 U.S.C. § 3553(a)(2), (a)(6)).  Chief Judge Winmill stated that
the court would "consider granting a variance in cases where drug purity
testing has been competed, so as to ameliorate the unwarranted disparity
between cases involving tested and untested substances, and to impose a
sentence that reflects the seriousness of the offense."  Id. at 8.  Apart from
requesting that this court adopt Chief Judge Winmill's reasoning, Mr. Walter
offered no argument why deviation from the USSG was warranted in Ms. Janis-
Bauer's case.  See CR Docket No. 85.

### 5.    Sentencing

A sentencing hearing was held for Ms. Janis-Bauer on May 6, 2019.  See
CR Docket No. 94.  The court first asked Mr. Walter if he reviewed the PSR with
Ms. Janis-Bauer.  See CR Docket No. 124 at p. 2.  Mr. Walter confirmed that
he had.  Id.  The court noted that Mr. Walter had filed an objection on
Ms. Janis-Bauer's behalf to the quantity of methamphetamine attributable to

Ms. Janis-Bauer. Id. In support of the objection, Mr. Walter argued that

Ms. Janis-Bauer had pleaded guilty to a mixture containing methamphetamine

and was not, at the time she entered the guilty plea, aware that the government

was testing or planned to test any of the methamphetamine for purity. Id. at

p. 3. Mr. Walter acknowledged that the signed factual basis statement which

accompanied the plea agreement provided that the government could develop

additional drug quantities attributed to Ms. Janis-Bauer for sentencing

purposes and implied, without formally arguing, that the provision in the

factual basis statement could be read to refer to changes in the weight of the

mixture, not a purity analysis. Id. at pp. 3-4.

The government argued against the objection. Id. at pp. 4-5. First, the

government argued that the testing of the methamphetamine for purity did not

breach the plea agreement, and purity is a separate guideline consideration

that was not precluded by the plea agreement. Id. at p. 4. The government

also argued that the factual basis statement, which provided for the

development of additional drug quantities for sentencing purposes, should be

extended to cover drug purity. Id. at p. 5.

The court overruled Mr. Walter's objection. Id. at p. 5. The court found

that the government did not violate the plea agreement by analyzing the

methamphetamine for purity. Id. The court based its finding on the factual

basis statement's provision that "[t]he parties understand that additional

information relevant to sentencing, including additional drug quantities, may

be developed and attributed to the defendant for sentencing purposes." Id. at

16

p. 5.  The court also noted that the plea agreement authorized the government to recommend any sentence within the statutory limits.  Id. at p. 6.  Because, the court concluded, the probation officer found that some of the drugs attributable to Ms. Janis-Bauer were actual methamphetamine and some was a mixture containing methamphetamine, the base offense level was properly calculated in the amended draft PSR and final PSR.  Id. at p. 6.  Lastly, the court noted that the plea agreement did not contain a stipulation to a total offense level that both parties thought applied.  Id. at p. 7.  Thus, the PSR's calculation of the USSG range remained the same.  Id.

Next, the court informed Ms. Janis-Bauer that it had reviewed her allocution letter and letters submitted on her behalf from Winifred Janis, Gerald Ruden, and Bianca Schaller.  Id.  The court then invited Mr. Walter to speak on behalf of his client.  Id. at p. 8.

Mr. Walter requested a downward variance based upon Chief Judge Winmill's June 15, 2017, memorandum in United States v. Delozier, supra.  Id. Mr. Walter remarked that, because Pseudoephedrine was made harder to get, much of the methamphetamine on the drug market comes from labs and is pure.  Id.  Mr. Walter likened the situation to a milder version of the disparity in sentencing between crack cocaine and powder cocaine.  Id. at p. 9. Mr. Walter noted the fact that Ms. Janis-Bauer had a support system and family, and that she had not caused any problems while in custody despite experiencing unfavorable conditions.  Id.  Lastly, Mr. Walter asked the court to sentence Ms. Janis-Bauer at the lower end of the guideline range.  Id.

17

Next, Ms. Janis-Bauer addressed the court herself.  Id.  First, Ms. Janis-Bauer apologized and stated that she fully accepted responsibility for her actions.  Id.  She remarked that she felt embarrassed and ashamed, and she appreciated the consequences of her actions.  Id. at pp. 9-10.  Ms. Janis-Bauer stated that she wanted to give back to the community and make her amends, in addition to strengthening her faith.  Id. at p. 10.  She said she had hope for a better future and commented that she loved her community, friends, and family.  Id.  Lastly, Ms. Janis-Bauer thanked the court for listening.  Id.

The court asked Ms. Janis-Bauer a few questions about her family and her work history, in addition to discussing with Ms. Janis-Bauer why she started using meth again shortly after she got out of prison and how she planned to stay drug-free after her eventual release from custody.  Id. at pp. 10-13.  The court asked Ms. Janis-Bauer if there was anything else she wanted the court to know.  Id. at p. 13.  She said there was not.  Id.

The court addressed Ms. Janis-Bauer's family and friends in the gallery and asked if any of them wished to say anything.  Id. at p. 13.  Alexandria Barrett, Ms. Janis-Bauer's daughter, approached with her two-month-old son and stated it was important that Ms. Janis-Bauer be part of Ms. Barrett's son's life.  Id.  Ms. Barrett remarked that being part of her son's life would help Ms. Janis-Bauer stay drug-free and that she needed support from her mom as she went forward with her life plans.  Id. at pp. 13-14.

Jennifer, a friend of Ms. Janis-Bauer, addressed the court.  Id. at p. 15. Jennifer told the court she met Ms. Janis-Bauer two or three years earlier and

18

that she knew what Ms. Janis-Bauer struggled with because Jennifer used to be an addict. Id. at p. 15. Jennifer remarked that she and Ms. Janis-Bauer had been talking about spirituality and expressed affection for Ms. Janis-Bauer. Id. at p. 16.

Maren, another friend of Ms. Janis-Bauer, addressed the court. Id. at p. 16. Maren had known Ms. Janis-Bauer for over twenty years and told the court that Ms. Janis-Bauer was very reliable when sober. Id. Maren told the court that her children looked up to Ms. Janis-Bauer and missed her. Id. About Ms. Janis-Bauer, Maren remarked, "[s]he's a good person." Id. at p. 17.

Then, the court addressed Ms. Janis-Bauer. Id. at p. 18. The court explained that it would depart downward from the USSG range and sentenced Ms. Janis-Bauer to 210 months' imprisonment followed by five years' supervised release. Id. at pp. 19-20. The court recommended to the Bureau of Prisons that Ms. Janis-Bauer be allowed to participate in its substance abuse treatment program. Id. at p. 20. The court informed Ms. Janis-Bauer that she had given up her right to appeal, but if she nevertheless wished to appeal, she must do so within 14 days. Id. at pp. 22-23.

### 6.    *Pro Se* Appeal

On May 15, 2019, Ms. Janis-Bauer timely filed *pro se* a notice of appeal to the Eighth Circuit. See CR Docket No. 99. Mr. Walter, on behalf of Ms. Janis-Bauer, filed a motion for leave to proceed *in forma pauperis* on May 20, 2019. CR Docket No. 102. The same day, Mr. Walter filed a motion for leave to withdraw as Ms. Janis-Bauer's attorney (CR Docket No. 103), and the

Eighth Circuit granted Ms. Janis-Bauer leave to proceed *in forma pauperis* (CR Docket No. 104). On May 21, 2019, Mr. Walter, on behalf of Ms. Janis-Bauer, filed a hand-written request to withdraw her notice of appeal. CR Docket No. 106. The request, which Ms. Janis-Bauer signed, reads as follows: "Would like to withdraw appeal #19-2022, I misunderstood[.] Thank you!" Id. On May 22, 2019, the Eighth Circuit denied Mr. Walter's motion for leave to withdraw as Ms. Janis-Bauer's attorney (CR Docket No. 112), denied Ms. Janis-Bauer's request to withdraw the appeal (CR Docket No. 108), and appointed Mr. Walter to represent Ms. Janis-Bauer on appeal (CR Docket No. 113). Then, on May 24, 2019, the Eighth Circuit granted the request to voluntarily dismiss the appeal. CR Docket No. 114.

**B.    Ms. Janis-Bauer's § 2255 Claims**

Ms. Janis-Bauer filed her § 2255 motion on March 20, 2020. She raises five claims in her motion. Each claim alleges constitutionally deficient representation by Mr. Walter in violation of Ms. Janis-Bauer's Sixth Amendment rights.

In claim one, Ms. Janis-Bauer asserts her Sixth Amendment right to effective assistance of counsel was violated in pre-plea proceedings. She asserts that Mr. Walter failed to investigate and provide her accurate information regarding her sentencing exposure even though she provided him the details necessary to ascertain the applicable range. Ms. Janis-Bauer also asserts that Mr. Walter failed to file any pre-trial motions even though there were cognizable issues regarding the validity of several searches in her case

and that he failed to obtain expert witnesses for her defense.  See Docket No. 2 at p. 5.  The memorandum includes as part of claim one the post-plea claim that Mr. Walter provided ineffective assistance by failing to develop and offer mitigation evidence based upon Ms. Janis-Bauer's mental health history and drug history.  Because this ground is asserted separately as claim three, the court does not consider it as part of claim one.

Ms. Janis-Bauer asserts in her second ground that Mr. Walter was constitutionally ineffective during plea negotiations and through the plea agreement.  Specifically, Ms. Janis-Bauer alleges that Mr. Walter "failed to fulfill the obligations of an aggressive counsel during the entire plea negotiation process and appeared disinterested.  He also failed to answer the questions of Petitioner[,] who was attempting to exercise her constitutional rights."  Docket No. 20 at pp. 7-8.  She also contends in ground two that Mr. Walter rendered ineffective assistance of counsel by failing to provide her with accurate guidance about her sentencing exposure.  Id. at p. 8; Docket No. 2 at p. 8.[2] Because this allegation was first made in ground one, the court will discuss it as part of ground one.

Ms. Janis-Bauer also asserts that Mr. Walter was ineffective for compelling her to withdraw her appeal.  Docket No. 20 at p. 7.  Because

---

[2] The court notes that page seven of Ms. Janis-Bauer's memorandum in support of her § 2255 motion, which appears to have contained some of her second claim, is missing.  The Clerk of Court has confirmed that page seven is missing from the original document submitted by Ms. Janis-Bauer.  To avoid confusion, the court refers to the page numbers printed at the bottom of the page in Docket No. 2.

Ms. Janis-Bauer separately raised this post-plea claim in ground four, the court addresses it only in its discussion of ground four. Lastly, Ms. Janis-Bauer alleges in ground two that Mr. Walter was ineffective because he "failed to properly explore the issue of Petitioner's mental health and drug abuse issues, which obviously impacted her behavior prior to her arrest." Id. This allegation relates to the pre-plea failure-to-investigate claim Ms. Janis-Bauer raised in ground one. Therefore, the court addresses it there.

In ground three, Ms. Janis-Bauer asserts that Mr. Walter failed to offer mental health history and drug history evidence in mitigation of the sentence recommended by the government. Id. at p. 7. In her memorandum, Ms. Janis-Bauer clarifies the claim and argues that Mr. Walter's representation was constitutionally deficient because he failed to offer evidence that she would have benefitted more from extensive mental health treatment than a prison sentence. Id. at p. 8. Ms. Janis-Bauer also asserts that Mr. Walter provided ineffective assistance of counsel by failing to arrange a separate mental health examination of Ms. Janis-Bauer to ascertain the nature of her mental deficiencies and substance dependence.

In ground four, Ms. Janis-Bauer asserts Mr. Walter was ineffective for incorrectly advising her that she could receive a higher sentence if she pursued a direct appeal. Ms. Janis-Bauer contends that, although Mr. Walter filed appeal documents on her behalf, he inaccurately told her she could receive a longer sentence by pursuing the appeal and that he had not been paid to file an appeal.

In the fifth and final claim in support of her motion, Ms. Janis-Bauer alleges Mr. Walter's representation was constitutionally deficient because the character witnesses who testified in support of her at the sentencing hearing were insufficient and ill prepared.  Ms. Janis-Bauer also asserts that Mr. Walter failed to offer comprehensive mitigation evidence showing that she would have benefited more from mental health treatment than a term of imprisonment and failed to object to the conditions of release.

## DISCUSSION

### A.    Scope of a § 2255 Motion

Section 2255 of Title 28 of the United States Code was enacted to supersede habeas corpus practice for federal prisoners.  Davis v. United States, 417 U.S. 333, 343-44 (1974).  Section "2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus."  Id. at 343. Prior to the enactment of § 2255, habeas claims had to be brought in the district where the prisoner was confined, resulting in overburdening those districts where federal correctional institutions were located and presenting logistical issues because the records in the underlying criminal case were often in a distant location.  United States v. Hayman, 342 U.S. 205, 212-16 (1952). The enactment of § 2255 resolved these issues by requiring that the motion be filed in the sentencing court.  Id.

The scope of a § 2255 motion is seemingly broader than the scope of a habeas petition, the latter of which is typically limited to allegations of a constitutional dimension.  Section 2255 allows a federal prisoner to "vacate, set

aside or correct" a federal sentence on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." See 28 U.S.C. § 2255.

Where the allegation for relief is *not* based on a violation of a Constitutional or federal statutory right or an assertion that the court was without jurisdiction, the Supreme Court has read a "fundamentality" requirement into § 2255—relief is available for only those errors which constitute a "fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." Hill v. United States, 368 U.S. 424, 428 (1962); see Peguero v. United States, 526 U.S. 23, 27-30 (1999).

An evidentiary hearing may be necessary on a § 2255 motion if there are factual issues to be resolved. But "files and records of the case [are] sufficient alone to dispose of the motion where they conclusively show that the prisoner is entitled to no relief. " United States v. Goodman, 590 F.2d 705, 710 (8th Cir. 1979) (internal quotation omitted). In the Eighth Circuit, "[a] § 2255 motion may be dismissed without a hearing if (1) movant's allegations, accepted as true, would not entitle him to relief, or (2) [the] allegations cannot be accepted as true because they are contradicted by the record, are inherently incredible, or are conclusions rather than statements of fact." Winters v. United States, 716 F.3d 1098, 1103 (8th Cir. 2013).

Generally, petitioners are precluded from asserting claims pursuant to § 2255 that they failed to raise on direct appeal. United States v. Frady, 456 U.S. 152, 165-66 (1982); McNeal v. United States, 249 F.3d 747, 749 (8th Cir. 2001). However, appellate courts generally refuse to review claims of ineffective assistance of counsel on direct appeal; such claims are, therefore, properly addressed in a 28 U.S.C. § 2255 motion. See United States v. Campbell, 764 F.3d 880, 892-93 (8th Cir. 2014); United States v. Lee, 374 F.3d 637, 654 (8th Cir. 2004) (holding that ineffective assistance of counsel claims are not generally cognizable on direct appeal and will be heard only to prevent a miscarriage of justice or in cases where the district court has developed a record on the issue). Therefore, no procedural default analysis applies to Ms. Janis-Bauer's claims of constitutionally deficient counsel.

**B.    Standard Applicable to Rule 12(b)(6) Motions**

The government's motion to dismiss Ms. Janis-Bauer's § 2255 motion is based on Federal Rule of Civil Procedure 12, specifically part (b)(6) of Rule 12. See Docket No. 16. The Federal Rules of Civil Procedure are applicable to § 2255 habeas actions so long as the procedural rules do not conflict with the habeas statutes or the Rules Governing Section 2255 Cases in the United States District Courts ("Governing Rules"). See Governing Rule 12. Federal Rule of Civil Procedure 12(b)(6) is not inconsistent with the Governing Rules. Compare Governing Rules 4 & 5 (allowing respondent to respond to petitioner's habeas petition with a motion), with FED. R. CIV. P. 12(b)(6) (same); see also

Ebert v. Clarke, 320 F. Supp. 2d 902, 909-10 (D. Neb. 2004) (holding that FED. R. CIV. P. 12(b)(6) applies in habeas proceedings).

Rule 12(b)(6) allows dismissal of a habeas petition if the petitioner has failed to state a claim upon which relief can be granted. See FED. R. CIV. P. 12(b)(6). Petitioners must plead "enough facts to state a claim to relief that is *plausible* on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (emphasis added).

Under Federal Rule of Civil Procedure 8(a)(2), a petitioner must plead "only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' " Id. at 555 (quoting FED. R. CIV. P. 8(a)(2)). A habeas petition does not need "detailed factual allegations" to survive a motion to dismiss, but a petitioner must provide the grounds for his entitlement to relief and cannot merely recite the elements of his cause of action. Id. at 555 (citing Conley v. Gibson, 355 U.S. 41, 47 (1957) & Papasan v. Allain, 478 U.S. 265, 286 (1986)). There is also a "plausibility standard" which "requires a [petition] with enough factual matter (taken as true)" to support the conclusion that the petitioner has a valid claim. Id. at 556. Ms. Janis-Bauer's § 2255 motion must contain sufficiently specific factual allegations in order to cross the line between "possibility" and "plausibility" of entitlement to relief. Id.

There are two "working principles" that apply to Rule 12(b)(6) motions. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). First, courts are not required to accept as true legal conclusions "couched as factual allegation[s]" contained in a petition. Id. (citing Twombly, 550 U.S. at 555). "Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (quoting Twombly, 550 U.S. at 555).  Rule 8 "does not unlock the doors of discovery for a [petitioner] armed with nothing more than conclusions." Iqbal, 556 U.S. at 678-79.

Second, the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679 (quoting lower court decision Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007)).  Where the petitioner's allegations are merely conclusory, the court may not infer more than the mere possibility of misconduct, and the petitioner has *alleged*—but has not "show[n]"—that they are entitled to relief as required by Rule 8(a)(2).  Iqbal, 556 U.S. at 679 (emphasis added).

The Court explained that a reviewing court should begin by identifying statements in the petition that are conclusory and therefore not entitled to the presumption of truth.  Id. at 679-80.  Legal conclusions must be supported by factual allegations demonstrating the grounds for a petitioner's entitlement to relief.  Id. at 679; Twombly, 550 U.S. at 555; FED. R. CIV. P. 8(a)(2).  A court should assume the truth only of "well-pleaded factual allegations," and then may proceed to determine whether the allegations "plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.  These are the principles guiding the court's evaluation of respondent's motion.

Rule 12(b)(6) requires the court to evaluate the sufficiency of a petitioner's pleading of a claim by examining his or her petition.  See FED. R. CIV. P. 12(b)(6); Iqbal, 556 U.S. at 679.  Courts evaluating a Rule 12(b)(6)

motion are not strictly limited to evaluating the petition alone, however.
Dittmer Props., L.P. v. F.D.I.C., 708 F.3d 1011, 1021 (8th Cir. 2013).  They
may consider "matters incorporated by reference or integral to the claim, items
subject to judicial notice, matters of public record, orders, items appearing in
the record of the case, and exhibits attached to the complaint whose
authenticity is unquestioned."  Id. (quoting Miller v. Redwood Toxicology Lab.,
Inc., 688 F.3d 928, 931 n.3 (8th Cir. 2012) (quoting 5B CHARLES A. WRIGHT &
ARTHUR R. MILLER, FED. PRAC. & PROC. § 1357 (3d ed. 2004))).

When a respondent files a response to a § 2255 action, whether it be an
answer or a motion to dismiss, the respondent is directed to attach any
transcripts or other records the respondent considers to be relevant and which
are not available in the court's records.  See Governing Rule 5(c).  In addition,
Rule 4 specifically directs the court to examine the record of prior proceedings
in that court.  See Governing Rule 4(b).  In addition, the government has
supplied the court with an affidavit from Mr. Walter addressing some of
Ms. Janis-Bauer's allegations of ineffective assistance claiMs.  See Docket No.
14.  The court considers this affidavit as well.

Because these documents are required by Governing Rule 5(c), and
because these documents are of the type which the court would be allowed to
judicially notice, the court considers these documents in ruling on
respondent's Rule 12(b)(6) motion.  Dittmer Props., L.P., 708 F.3d at 1021;
FED. R. EVID. 201(b); Governing Rule 5(c).

## C.    The Standard for Ineffective Assistance Claims

The Sixth Amendment of the Constitution of the United States affords a criminal defendant the right to assistance of counsel.  U.S. Const. amend. VI.  The Supreme Court "has recognized that 'the right to counsel is the right to effective assistance of counsel.' "  Strickland v. Washington, 466 U.S. 668, 686 (1984) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)).  Strickland is the benchmark case for determining if counsel's assistance was so defective as to violate a criminal defendant's Sixth Amendment rights and require reversal of a conviction.  Id. at 687.  "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness."  Id. at 687-88.  The defendant must also show that counsel's unreasonable errors or deficiencies prejudiced the defense and affected the judgment.  Id. at 691.  The defendant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  In sum, a defendant must satisfy the following two-prong test.  Id. at 687.

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Id.

"There is a presumption that any challenged action was sound trial strategy and that counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment." Hall v. Luebbers, 296 F.3d 685, 692 (8th Cir. 2002) (quotation omitted). It is the petitioner's burden to overcome this presumption, and a "petitioner cannot build a showing of prejudice on a series of errors, none of which would by itself meet the prejudice test." Id. Counsel's conduct must be judged by the standards for legal representation which existed at the time of the representation, not by standards promulgated after the representation. Bobby v. Van Hook, 558 U.S. 4, 7-9 (2009). American Bar Association standards and similar directives to lawyers are only guides as to what reasonableness of counsel's conduct is; they are not its definitive definition. Id. The Supreme Court distinguishes between those cases in which the new evidence "would barely have altered the sentencing profile presented to the sentencing judge," and those that would have had a reasonable probability of changing the result. Porter v. McCollum, 558 U.S. 30, 41 (2009). Judicial scrutiny of attorney performance is highly deferential, with a strong presumption that counsel's conduct falls within the range of reasonable professional conduct. Strickland, 466 U.S. at 698. Failure to raise a meritless claim does not constitute ineffective assistance of counsel. Thomas v. United States, 951 F.2d 902, 904 (8th Cir. 1991) ("[B]ecause the claim lacks merit, [the petitioner's] attorney was not ineffective for failing to raise it.").

In assessing the prejudice prong, it is important for courts to consider " 'the totality of the available mitigation evidence—both that adduced at trial, and the evidence adduced in the habeas proceeding'—and 'reweig[h] it against the evidence in aggravation.' " Porter, 558 U.S. at 41 (quoting Williams v. Taylor, 529 U.S. 362, 397-98 (2000)).  It is not necessary for the petitioner to show "that counsel's deficient conduct more likely than not altered the outcome" of their case, only that there is "a probability sufficient to undermine confidence in [that] outcome." Id. at 44.  It is not enough for a movant to show that the error had some "conceivable effect" on the result of the proceeding because not every error that influences a proceeding undermines the reliability of the outcome of the proceeding.  Morales v. Ault, 476 F.3d 545, 550 (8th Cir. 2007) (citing Odem v. Hopkins, 382 F.3d 846, 851 (8th Cir. 2004)).  To the extent Ms. Janis-Bauer's claims arise out of the plea process, she must show a reasonably probability that, but for counsel's alleged errors, she would not have pled guilty and would have insisted on going to trial.  Strickland, 466 U.S. at 688; United States v. Prior, 107 F.3d 654, 661 (8th Cir. 1997).

**D.    Pre-Plea Allegations**

**1.    Because Ms. Janis-Bauer's Plea Was Made Intelligently and Voluntarily, the Court Need Not Address her Pre-Plea Allegations.**

When a § 2255 petitioner has been convicted in their direct criminal proceedings by entering a guilty plea, the scope of issues available to them to be raised in habeas proceedings is curtailed.  As the Supreme Court has stated:

> [A] guilty plea represents a break in the chain of events which has
> preceded it in the criminal process.  When a criminal defendant has
> solemnly admitted in open court that he is in fact guilty of the offense
> with which he is charged, he may not thereafter raise independent claims
> relating to the deprivation of constitutional rights that occurred prior to
> the entry of the guilty plea.  He may only attack the voluntary and
> intelligent character of the guilty plea by showing that the advice he
> received from counsel was not within the standard set forth in [McMann
> v. Richardson, 397 U.S. 759 (1970)].
>
> A guilty plea, voluntarily and intelligently entered, may not be vacated
> because the defendant was not advised of every conceivable
> constitutional [issue] he might have to the charge, no matter how
> peripheral such [an issue] might be to the normal focus of counsel's
> inquiry.  And just as it is not sufficient for the criminal defendant
> seeking to set aside such a plea to show that his counsel in retrospect
> may not have correctly appraised the constitutional significance of
> certain historical facts, . . . it is likewise not sufficient that he show that
> if counsel has pursued a certain factual inquiry such a pursuit would
> have uncovered a possible constitutional infirmity in the proceedings.

Tollett v. Henderson, 411 U.S. 258, 267 (1973).

The Supreme Court has explained why a guilty plea cuts off all
constitutional claims that predate a plea.  Pleas are necessarily based on
imperfect knowledge of the law and facts—one can only know that the result of
a full-blown jury trial will be after the trial has been had, and even then, truth
is often still in dispute.  McMann, 397 U.S. at 769-70.  If a defendant admits
his commission of a crime upon good-faith, reasonably competent advice from
his counsel, the defendant assumes the risk that his attorney might be wrong
about the facts or the outcome of a legal issue.  Id. at 774.

The issue presented in habeas proceedings is not whether—in
retrospect—counsel was right or wrong about a certain fact or legal analysis,
but rather whether the defendant's plea was made voluntarily and intelligently
and upon advice from his attorney that was "within the range of competence

demanded of attorneys in criminal cases." Id. at 770-71.  Therefore, a

defendant who pleaded guilty because of a prior coerced confession that he

believed would be used against him at trial is not entitled to an evidentiary

hearing in a habeas proceeding without showing other, extenuating

circumstances.  Id. at 771.

A voluntary and knowing plea is not transformed into a coerced plea

simply because the defendant pleaded guilty to obtain a lesser sentence than

the maximum possible penalty that would have been applicable if defendant

had been convicted at trial.  Brady v. United States, 397 U.S. 742, 751 (1970);

Parker v. North Carolina, 397 U.S. 790, 795 (1970).  Guilty pleas are valid if

the court affirmatively finds the plea was both voluntary and intelligent.

Boykin v. Alabama, 395 U.S. 238, 242 (1969).

A plea is voluntary if it is made by a defendant who is "fully aware of the

direct consequences, including the actual value of any commitments made to

him by the court, prosecutor, or his own counsel," and so long as the plea was

not induced by threats, misrepresentation, or by promises that are improper,

unfulfilled, or unfulfillable.  Brady, 397 U.S. at 755.

A plea is intelligently made if the defendant was aware of the nature of

the charge against them and they were mentally competent and in control of

their mental faculties.  Id. at 756.  A plea is not rendered unintelligently made

because, long after the plea was entered, the defendant realizes their cost-

benefit analysis as to whether to go to trial or to plead guilty did not correctly

take into account every relevant factor which entered into their decision.  Id. at 756-57.

Here, an examination of the transcript of the plea hearing reveals Ms. Janis-Bauer's plea was voluntary, knowing and intelligent.  The only challenge Ms. Janis-Bauer has to the constitutionality of her plea is that Mr. Walter's alleged ineffective representation rendered her plea involuntary. Although Ms. Janis-Bauer did not make this voluntariness argument in her § 2255 motion or the memorandum she filed in support thereof, she made it in her response to the government's motion to dismiss.

> ███████████████████████████████████████████
> ███████████████████████████████████  From the case's
> commencement and up until Petitioner was convinced to plead
> guilty, defense counsel wrongfully represented to Petitioner what
> her ultimate sentence would be, and that the government had
> agreed that under the facts of the case and the plea agreement that
> extensive imprisonment was not warranted.
>
> *       *       *
>
> In this instance, as a result of defense counsel's constitutionally
> inadequate representation, Petitioner was induced to plead guilty
> based upon her counsel's false representations, *rendering her
> agreement to plead guilty involuntary,* and instead of receiving the
> sentence her counsel told her she would receive, received a long
> sentence."

Docket No. 20 at p. 5 (emphasis added).  Ms. Janis-Bauer also alleged that Mr. Walter told "her that she had no choice but to accept the government's plea offer."  Id. at 4.

Ms. Janis-Bauer's affidavit states, "despite my requests that [Mr. Walter] negotiate for a reduced plea ███████████████████████

███████████████████████ he told me to sign the first offer, 'take it or leave it.' " Docket No. 11 at p. 1, ¶ 5. Ms. Janis-Bauer also remarked that she "was unhappy with the results of the plea agreement." Id. at p. 2, ¶ 10. Ms. Janis-Bauer repeatedly argues that Mr. Walter incorrectly advised her of her sentencing exposure. Yet, she has provided no facts showing what she believed, based upon Mr. Walter's alleged ineffective assistance, her sentencing exposure was or how correct information regarding her sentencing exposure would have affected the outcome of her case.

Mr. Walter's affidavit provides as follows:

> In movant's memorandum, she claims that Affiant was ineffective for not investigating her prior convictions that were used to calculate her sentence. Movant had 7 prior felony convictions. Movant admitted to your affiant that all the convictions were valid. . . . Your affiant calculated movant's criminal history and drug quantity with movant and her potential sentencing range the first time he met her and multiple times thereafter. Therefore, movant was advised of her sentencing exposure.

Docket No. 14 at p. 1, ¶ 2. Mr. Walter also stated,

> The government made their standard plea offer. I did inform movant that the offer would not change and that she could accept it or go to trial. The choice was hers. ████████████████ ████████████████████████████████████████

Id. at p. 3, ¶ 7.

While there are contested issues of fact as to whether Mr. Walter correctly advised Ms. Janis-Bauer of her sentencing exposure, whether the government ever agreed to recommend a lesser sentence, and whether Mr. Walter told Ms. Janis-Bauer that she had "no choice but to accept the

government's plea offer,"[3] no hearing is required here.  Even taking all the facts

Ms. Janis-Bauer has alleged as true, her claim that Mr. Walter's ineffective

assistance made her plea involuntary "is inadequate on its face."  New v.

United States, 652 F.3d 949, 954 (8th Cir. 2011).

There is "abundant [Eighth Circuit] precedent holding that inaccurate

advice of counsel about the sentencing guidelines or likely punishment does

not render involuntary a defendant's decision to plead guilty, so long as the

defendant is informed of the maximum possible sentence permitted by statute

and the court's ability to sentence within that range."  United States v.

Quiroga, 554 F.3d 1150, 1555-56 (8th Cir. 2009) (noting that, especially

because the USSG are "merely advisory, and thus less likely to determine the

ultimate sentence," an otherwise voluntary plea is not made involuntary due to

counsel's mistaken advice).  See also United States v. Granados, 168 F.3d 343,

345 (8th Cir. 1999) (per curiam) (stating that "a defendant's reliance on an

attorney's mistaken impression about the length of sentence is insufficient to

render a plea involuntary as long as the court informed the defendant of [their]

maximum possible sentence"); United States v. Spears, 235 F.3d 1150,

1151-52 (8th Cir. 2001) (holding that a defendant's guilty plea was "knowing

and voluntary" despite "any confusion about how he would fare under the

Sentencing Guidelines"); Roberson v. United States, 901 F.2d 1475, 1478 (8th

Cir. 1990) (holding that a defendant's reliance on defense counsel's erroneous

prediction that he would receive a more lenient sentence if he pled guilty did

_____

[3] Docket No. 20 at p. 4.

not make his plea involuntary where the defendant was fully informed of the maximum sentence); <u>Hayes v. United States</u>, No. 4:09-CV-116 CAS, 2012 WL 718636, at *6-7 (E.D. Mo. Mar. 6, 2012) (finding guilty plea knowing and voluntary "despite any representations [movant's] counsel may have made regarding the length of the sentence that would be imposed"); <u>United States v. Ram</u>, No. 5:13-CR-50045, 2018 WL 2453005, at *9-10 (W.D. Ark. Apr. 24, 2018) (rejecting claim in § 2255 motion that plea was not voluntary due to "ineffective assistance of counsel, inducement, threat, deception, and misrepresentation" where movant alleged that his attorney guaranteed a 5-year prison sentence because the court advised the movant of the statutory minimum and maximum sentences at sentencing and the plea agreement specified that it did not promise a specific sentence), <u>adopted by</u>, 2018 WL 2448453 (W.D. Ark. May 31, 2018); <u>United States v. Bond</u>, 135 F.3d 1247, 1248 (8th Cir. 1998) (per curiam) ("A defense counsel's erroneous estimate of a guidelines sentence does not render an otherwise voluntary plea involuntary.").

Further, a defendant who pleads guilty has no right to be apprised of the sentencing options outside the statutory maximum and minimum sentences. <u>Thomas v. United States</u>, 27 F.3d 321, 326 (8th Cir. 1994). In <u>Thomas</u>, the Eighth Circuit reasoned that a defendant's "right to be apprised of the court's sentencing options is no greater than the provisions of FED. R. CRIM. P. 11(c)(1), which requires only that the court inform the defendant of the applicable mandatory minimum and maximum sentences." <u>Id.</u> The court held that the alleged failure by Mr. Thomas's attorney to inform him of the possibility of an

enhanced sentence as a career offender did not establish that the attorney's representation fell below an objective standard of reasonableness.  Id.  See also Barker v. United States, 7 F.3d 629, 633 (7th Cir. 1993), cert. denied, 114 S. Ct. 939 (1994) (holding that "misinformation from a defendant's attorney, such as an incorrect estimate of the offense severity rating, standing alone, does not constitute ineffective assistance of counsel"); United States v. Sweeney, 878 F.2d 68, 69-70 (2d Cir. 1989) (lawyer's "erroneous estimate" of USSG range was not ineffective assistance of counsel).

Here, ███████████████████████████████████████████
███████████████████████████████████  Ms. Janis-Bauer knew she would be subject to a mandatory minimum sentence of 10 years' imprisonment and a maximum of life in prison.  The plea agreement, which Ms. Janis-Bauer and Mr. Walter signed on February 13, 2019, was clear about this.  In it, Ms. Janis-Bauer acknowledged that she "ha[d] been informed of the charges and allegations against her and the penalty therefore, and that she underst[ood] [the] same."  See CR Docket No. 70 at p. 1.  The plea agreement also provided:

> The charge carries a mandatory minimum sentence of 10 years in prison and a maximum sentence of life in prison, a $10 million fine, or both, and a term of supervised release.  The term of supervised release in this case is a minimum of 5 years and a maximum of life.

Id. at p. 2.  The plea agreement also provided that agreements between the government and Ms. Janis-Bauer, or recommendations by either party, for a specific sentence or sentencing range or regarding the applicability of a particular Sentencing Guideline is not binding on the court.  Id.

Ms. Janis-Bauer appeared before the court on February 22, 2019, to enter her guilty plea and acknowledge that she had reviewed the agreement with her attorney, understood it, signed it, and that no one had threatened or forced her to sign. The court specifically informed Ms. Janis-Bauer of the minimum and maximum possible sentences for the offense. The court informed Ms. Janis-Bauer that the guidelines were advisory and that the court was not bound by the guidelines. Each of these facts supports the conclusion, under Eighth Circuit precedent, that Ms. Janis-Bauer's plea was knowing and voluntary.

An accused's representations during plea-taking, such as those concerning the voluntariness of the plea, carry a strong presumption of veracity. Nguyen v. United States, 114 F.3d 699, 703 (8th Cir. 1997). Because the plea agreement specifically advised Ms. Janis-Bauer of the applicable statutory sentencing range and the court advised her of the same at her plea hearing and because Ms. Janis-Bauer affirmed in the plea agreement and to the court that she had reviewed and understood the penalty for the charges against her, Ms. Janis-Bauer's claim that she was induced to enter her guilty plea by Mr. Walter's allegedly inaccurate advice about sentencing exposure is inadequate on its face.

Despite any advice from Mr. Walter about the ultimate length of her sentence or the sentence the government would recommend, the record supports the fact that Ms. Janis-Bauer's plea was voluntarily and intelligently made. Quiroga, 554 F.3d at 1155; Spears, 235 F.3d at 1152; Granados, 168

39

F.3d at 345; <u>Bond</u>, 135 F.3d at 1248.  Therefore, Ms. Janis-Bauer's plea was a valid plea under the constitution and the court need not consider on their merits Ms. Janis-Bauer's claims of pre-plea ineffective assistance of counsel.

### 2.    The Pre-Plea Claims Would Fail on the Merits.

If, for the purpose of argument, the court considered the merits of Ms. Janis-Bauer's claims of pre-plea ineffective assistance of counsel, the claims would fail on both prongs of <u>Strickland</u>.  Ms. Janis-Bauer's first claim (Mr. Walter rendered ineffective assistance when he failed to file pre-trial motions, obtain expert witnesses, obtain mitigation evidence based upon Ms. Janis-Bauer's mental health and substance abuse histories,[4] and review her criminal history to advise her accurately about the applicable sentence exposure) would fail on the merits.  Even accepting Ms. Janis-Bauer's factual allegations as true, she has not stated a claim on which habeas relief can be granted.

Here, Ms. Janis-Bauer offers no details to support her assertion that Mr. Walter's performance was deficient when he failed to file any pre-trial motions, obtain expert witnesses or otherwise investigate her case pre-plea.  Her statements are too vague.  <u>Spillers v. Lockhart</u>, 802 F.2d 1007, 1010 (8th Cir. 1986) (§ 2254 petitioner's vague and conclusory ineffective assistance claims were properly dismissed because petitioner did not allege any facts or specifics to identify how his counsel was ineffective).  Ms. Janis-Bauer offers no

---

[4] Ms. Janis-Bauer raises this separate, post-plea claim as ground three in her § 2255 motion. Therefore, the court does not discuss it here.

details about, for example, what witnesses Mr. Walter failed to interview, what those witnesses would have told him, what experts Mr. Walter should have obtained, and what those experts' opinions might have been.  Neither does the motion, or any of the papers Ms. Janis-Bauer has filed in support thereof, describe what evidence Mr. Walter should have, but failed to, marshal in her defense or how it would have affected the outcome of her case.

Ms. Janis-Bauer, in her response to the government's motion to dismiss, alleged that Mr. Walter "failed to properly explore the issue [sic] of [her] mental health and drug abuse issues, which obviously impacted her behavior prior to her arrest."[5]  Docket No. 20 at p. 7.  While this allegation is *more* specific than the rest, it is still not specific enough.  Mr. Janis-Bauer does not describe what mental health issues Mr. Walter should have investigated or, importantly, how the investigation of those issues would have affected the outcome of her case. Mr. Janis-Bauer's affidavit does indicate that she had a diagnosis from "the Lewis Clark treatment center" (Docket No. 11 at p. 1, ¶ 7), but nowhere does she indicate what the diagnosis was or how it would have affected the outcome of her case.  The same is true for the substance abuse issues; Ms. Janis-Bauer has alleged no facts indicating what a pre-plea investigation of her drug history would have revealed, especially considering the PSR's lengthy documentation of her substance abuse.

---

[5] Although this claim was made as part of ground two, the court considers it here with Ms. Janis-Bauer's other pre-plea failure-to-investigate claiMs.  See p. 22, supra.

Because Ms. Janis-Bauer has not described how any further investigation into her mental health or substance abuse histories would have resulted in the development of any defense theory, she has not shown how Mr. Walter's alleged failure to further investigate "resulted from inattention or neglect, rather than reasoned judgment." Marcrum v. Luebbers, 509 F.3d 489, 502 (8th Cir. 2007). The ineffective assistance of counsel claim for failure to investigate pre-plea fails on the first prong of Strickland.

As for challenging the searches of her vehicle and residence, Ms. Janis-Bauer's affidavit states that "the arresting officers coerced and bullied me in their warrantless search, done without my consent, and then intimidated me into providing information." Docket No. 11 at p. 1, ¶ 3. The government has presented an affidavit from Mr. Walter, wherein he states that, based upon his assessment of the facts, "[t]here were no legitimate motions [challenging the searches] to file." Docket No. 14 at p.1, ¶ 3.

The PSR contains facts, which Ms. Janis-Bauer does not dispute in her § 2255 motion, surrounding the searches, namely that police searched the vehicle incident to a lawful arrest and police obtained a search warrant for the hotel room where they discovered over 1,000 grams of methamphetamine. See CR Docket No. 88 at pp. 4-6, ¶¶ 7-16. Ms. Janis-Bauer has not alleged any ground, let alone a ground bearing a reasonable probability of success, on which the searches could have been challenged. Considering judicial scrutiny of attorney performance is highly deferential (Strickland, 466 U.S. at 698), and failure to raise a meritless claim does not constitute ineffective assistance of

42

counsel (Thomas, 951 F.2d at 904), Ms. Janis-Bauer has failed to state a claim on which relief can be granted.

The next assertion, that Mr. Walter rendered ineffective assistance by failing to correctly advise Mr. Janis-Bauer of her sentencing exposure, is inadequate on its face. Although Ms. Janis-Bauer's factual allegations, taken as true, could show deficient performance, she has not shown how accurate advice about her sentencing exposure would have affected her decision to plead guilty. The court, if it reached this claim on the merits, would recommend that the government's motion to dismiss be granted because "[Ms. Janis-Bauer's] allegations, accepted as true, would not entitle h[er] to relief." Winters, 716 F.3d at 1103.

"In the guilty plea context, a lawyer need not give wholly accurate advice in order to render effective assistance; he need not correctly predict the admissibility of evidence or anticipate future judicial holdings." Camacho v. Kelley, No. 5:12-CV-5069, 2016 WL 11260877, at *12 (W.D. Ark. Nov. 29, 2016), adopted by, 2017 WL 2124477 (W.D. Ark. May 16, 2017). The attorney's advice need only be "within the range of competence demanded of attorneys in criminal cases." McMann, 397 U.S. at 770-71.

Yet, while "[t]he decision to plead guilty—first, last, and always—rests with the defendant, not his lawyer," courts have nonetheless maintained that "the attorney has a clear obligation to fully inform her client of the available options." Smith v. United States, 348 F.3d 545, 552 (6th Cir. 2003). "[D]efense counsel has an obligation to '[a]ppris[e] a defendant about his

[sentencing] exposure under the sentencing guidelines.' " United States v. Penoncello, No. 18-CV-0266 (PJS), 2019 WL 4143880, at *5 (D. Minn. Aug. 30, 2019) (quoting United States v. Herrera, 412 F.3d 577, 580 (5th Cir. 2005). "A failure to provide professional guidance to a defendant regarding his sentence exposure prior to a plea may constitute deficient assistance." Moss v. United States, 323 F.3d 445, 474 (6th Cir. 2003) (citing Magana v. Hofbauer, 263 F.3d 542, 550 (6th Cir. 2001). "Defense counsel thus carries the 'paramount' duty to 'ensure that the client's decision [to waive their constitutional right to a trial] is as informed as possible.' " Camacho, 2016 WL 11260877, at *12 (quoting Miller v. Straub, 299 F.3d 570, 580 (6th Cir. 2002)).

"A criminal defendant has a right to expect at least that his attorney will review the charges with him by explaining the elements necessary for the government to secure a conviction, discuss the evidence as it bears on those elements, and explain the sentencing exposure the defendant will face as a consequence of exercising each of the options available." Smith, 348 F.3d at 553. "In a system dominated by sentencing guidelines, we do not see how sentence exposure can be fully explained without completely exploring the ranges of penalties under likely guideline scoring scenarios, given the information available to the defendant and his lawyer at the time." Id. (citing United States v. Day, 969 F.3d 39, 43 (3d Cir. 1992) (in the context of a rejected plea offer, reasoning that "familiarity with the structure and basic content of the [USSG] . . . has become a necessity for counsel who seek to give effective representation")).

However, the Eight Circuit has rejected an ineffective assistance claim based on counsel's alleged failure to accurately advise their client about sentencing consequences of a guilty plea where the defendant did not present evidence "tending to show that inadequate or inaccurate advice was given" and the court advised the defendant of the applicable maximum and minimum sentences. Wilcox v. Hopkins, 249 F.3d 720, 724-25 (8th Cir. 2001).

Here, the record before the court is mixed on the question of whether Mr. Walter accurately reviewed with and described to Ms. Janis-Bauer her sentencing exposure before the change of plea hearing. Mr. Walter avers in his affidavit that he calculated with Ms. Janis-Bauer her sentencing exposure based upon her criminal history and the drugs attributable to her the first time they met and multiple times thereafter. See Docket No. 14 at p. 1, ¶ 2. On the other hand, Ms. Janis-Bauer claims that Mr. Walter inaccurately advised her about her sentencing exposure was because he failed to "take the necessary steps to review [her] previous convictions." Docket No. 2 at p. 5.

Importantly, the court notes that the government did not file an information pursuant to 21 U.S.C. § 851 against Ms. Janis-Bauer seeking an increased penalty due to prior convictions. And, Ms. Janis-Bauer does not allege any facts from which the court could conclude there was some issue with regard to her prior convictions—i.e. that they were not hers, or that they were misdemeanors instead of felonies, etc. Thus, there is no concrete facts alleged by Ms. Janis from which the court could determine Mr. Walter's "investigation"

of these prior convictions would have yielded any useful information or that Ms. Janis-Bauer was prejudiced by his failure to do so.

Although facially there exists an unresolved factual issue, the "files and records of the case [are] sufficient alone to dispose of the motion where they conclusively show that the prisoner is entitled to no relief" and no evidentiary hearing is necessary. Goodman, 590 F.2d at 710. This is because "[Ms. Janis-Bauer's] allegations, accepted as true, would not entitle h[er] to relief." Winters, 716 F.3d at 1103. This is because, even taking Ms. Janis-Bauer's factual allegation that Mr. Walter failed to review her prior convictions as true, she alleges no facts or information showing prejudice. Instead, Ms. Janis-Bauer states, "all of these errors and omissions of defense counsel clearly prejudiced defendant, and directly led to the necessity of her pleading guilty, and her receiving additional prison time." Docket No. 20 at p. 7. ).

Nothing in Ms. Janis-Bauer's moving papers suggests a reasonable probability that, absent any inaccurate advice about sentencing exposure, the outcome of her case would have been different—e.g., because she would not have pled guilty or would have received a different sentence. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). Therefore, the first ground of Ms. Janis-Bauer's § 2255 motion is inadequate on its face.

Ms. Janis-Bauer asserts as her second ground that Mr. Walter was constitutionally ineffective during plea negotiations and through the plea

agreement.[6]  Specifically, Ms. Janis-Bauer alleges that Mr. Walter "failed to fulfill the obligations of an aggressive counsel during the entire plea negotiation process and appeared disinterested.  He also failed to answer the questions of Petitioner[,] who was attempting to exercise her constitutional rights."  Docket No. 20 at pp. 7-8.

This first allegation is a conclusion, not a factual allegation.  Mr. Janis-Bauer does not state *how* Mr. Walter's performance during plea negotiations fell below the objective standard of reasonableness demanded of attorneys.  She also does not describe what questions Mr. Walter did not answer.  These allegations are too vague and conclusory to show ineffective assistance.  Spillers, 802 F.2d at 1010 (petitioner's vague and conclusory ineffective assistance claims were properly dismissed because petitioner did not allege any facts or specifics to identify how counsel was ineffective).

Ms. Janis-Bauer's affidavit also addresses issues related to Mr. Walter's performance in negotiating her plea.  In the affidavit, Ms. Janis-Bauer avers, "despite my requests that he negotiate for a reduced plea ███████████ ████████████████████████████████████████████, [Mr. Walter] told me to sign the first offer, 'take it or leave it[.]' "  Docket No. 11 at p. 1, ¶ 5.  ████ ██████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████

---

[6] Ms. Janis-Bauer made other assertions in ground two, but the court considers them elsewhere in this recommendation because they were otherwise raised as separate grounds for relief. See pp. 21-22, supra.

████████████████████████████████████████████████

██████████████████████████████████████ <u>Id.</u> at

p. 1, ¶ 6.  Ms. Janis-Bauer's affidavit does not describe what evidence

Mr. Walter could have, at the time when the plea was being negotiated, offered

or how it would have affected the plea negotiations.

████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████

███████████████

The court finds that Ms. Janis-Bauer's sole remaining factual allegation,

that Mr. Walter told her to accept the first plea agreement, "take it or leave it,"

does not establish that his performance "fell below an objective standard of

reasonableness."  <u>Strickland</u>, 466 U.S. at 687-88.  Ms. Janis-Bauer does not

offer any factual allegations showing why Mr. Walter's advice that she should

accept the first offer was unreasonable.  Neither does she explain why it was unreasonable for Mr. Walter to advise her that the government would not make a more favorable offer, especially considering ███████████████████

███████████████████████████████████████████████

███████████  The second ground fails on the first <u>Strickland</u> prong.

Neither can—for each of the assertions considered in grounds one and two—Ms. Janis-Bauer meet the second <u>Strickland</u> prong.  To show prejudice arising from Mr. Walter's alleged deficient representation in her plea process, Ms. Janis-Bauer must show a reasonable probability that, but for Mr. Walter's alleged errors, she would not have pled guilty and would have insisted on going to trial.  <u>Strickland</u>, 466 U.S. at 688; <u>Prior</u>, 107 F.3d at 661.  A determination of prejudice "will depend on the likelihood that discovery of the evidence would have led counsel to change [their] recommendation as to the plea.  This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial."  <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985).  <u>See also</u> <u>Witherspoon v. Purkett</u>, 210 F.3d 901, 903-04 (8th Cir. 2000).

Nowhere in Mr. Janis-Bauer's moving papers does she assert that she would not have pled guilty and would have insisted on going to trial had Mr. Walter not allegedly failed to investigate, obtain expert witnesses, file pre-trial motions, correctly inform her of her sentencing exposure, or do something different in negotiating her plea.  Further, Ms. Janis-Bauer received a substantial benefit from the plea agreement.  ███████████████████

███████████████████████████████████████████████████

████████████████████████████████    See also Dotson v. Roper, No. 4:10-CV-00785,

2013 WL 5442919, at *9 (E.D. Mo. Sept. 30, 2013) (considering benefit to

movant in finding that claim of pre-plea ineffective assistance of counsel for

failure to investigate failed on the prejudice prong of Strickland).  Further,

██████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████    Put simply, Ms. Janis-Bauer has not shown any

probability that she would have rejected the plea agreement and proceeded to

trial if Mr. Walter had done any of the things she argues he should have.

    Ms. Janis-Bauer's first and second grounds in her § 2255 motion fail to

state a claim on which relief can be granted.  FED. R. CIV. P. 12(b)(6).  Therefore,

even if the court considered Ms. Janis-Bauer's pre-plea claims on their merits, the court would grant the government's motion to dismiss them.

**E.    Ground Three Fails Because Ms. Janis-Bauer Has Not Pled Sufficient Factual Allegations to Show Ineffective Assistance of Counsel for Not Seeking a Mental Health Evaluation.**

Ms. Janis-Bauer claims in ground three of her § 2255 motion that Mr. Walter was ineffective when he failed to offer mental health history and drug history evidence in mitigation of the sentence recommended by the government.[7]  This ineffective assistance of counsel claim is governed by the same Sixth Amendment and Rule 12(b)(6) principles discussed at length above. The government argues that Ms. Janis-Bauer's claims are too vague and overbroad to warrant relief, that Ms. Janis-Bauer has not overcome the presumption that whether to get an independent mental health evaluation was a matter of trial strategy, and that Ms. Janis-Bauer has not shown a reasonable probability that she would have been sentenced differently had Mr. Walter arranged for an independent mental health evaluation.  The court agrees with the government on all three points.  Ms. Janis-Bauer has not stated a plausible claim for relief, and this ground in her § 2255 motion should be dismissed.

First, Ms. Janis-Bauer's § 2255 motion and related papers do not contain factual allegations showing that Mr. Walter's alleged failure to secure an independent mental health examination constituted ineffective assistance.

---

[7] Ms. Janis-Bauer also stated this claim as part of ground one.  <u>See</u> p. 21, <u>supra</u>.  The court considers it here as part of ground three.

While the Supreme Court has instructed that *pro se* pleadings are to be liberally construed (Haines v. Kerner, 404 U.S. 519, 520-21 (1972)), "the principle of liberal construction will not save [Ms. Janis-Bauer's] pleadings if they are based on conclusory or non specific factual allegations." Voytik v. United States, 778 F.2d 1306, 1308 (8th Cir. 1985).

Here, Ms. Janis-Bauer has alleged only non-specific facts—e.g., that she "suffered from various mental health issues . . . that were not taken seriously by [Mr. Walter]," that "[a] thorough examination as to the relationship between [Ms. Janis-Bauer] and [Mr. Steele] would show that she exhibited many signs of mental health distress that could have been used in mitigation;" and she suffered "mental deficiencies and drug and alcohol dependence [that were] only minimally documented in [the PSR]." See Docket No. 20 at p. 9. Yet, nowhere in her papers has Ms. Janis-Bauer clarified what "issues" she is talking about or what "signs" she claims she exhibited. These non-specific factual allegations cannot support Ms. Janis-Bauer's claim for relief.

In her affidavit, Ms. Janis-Bauer avers that, "despite my repeated requests to him, [Mr. Walter] never submitted any readily-obtain[able] evidence to show that I had suffered many years of substance abuse and mental health issues, including a diagnosis from the Lewis Clark treatment center, although the records substantiating these facts were readily available." Docket No. 11 at p. 1, ¶ 7. If her mental health and substance abuse records were readily available to Mr. Walter in early 2019, it seems that Ms. Janis-Bauer could have obtained them, even from prison, to submit with her § 2255 motion.

52

Ms. Janis-Bauer does not address whether she attempted to obtain her records or, if she did, why she could not.

Even in the absence of records, Ms. Janis-Bauer's claims of mental illness are entirely non-specific. Nowhere in her moving papers does she explain what specific mental health issues she claims Mr. Walter should have offered as evidence in mitigation. Even when she refers to "a diagnosis" from a treatment center, she does not explain what she was diagnosed with or when the diagnosis was made.

The PSR documented that Ms. Janis-Bauer was admitted to the Human Services Center in Yankton on March 10, 2005, when she began experiencing symptoms of depression. She was consuming large amounts of alcohol at that time. While she was at the Center, Ms. Janis-Bauer was prescribed anti-depression medications. She was discharged from the Human Services Center on April 12, 2005, and she stopped taking the anti-depressants around one year later. The PSR also indicates that Ms. Janis-Bauer reported that she had not participated in any type of mental health counseling since that time.

While she claims her mental health issues were only minimally documented in the PSR, Ms. Janis-Bauer omits from the source from which the PSR author obtained information about her mental health history: Ms. Janis-Bauer herself. Yet, Ms. Janis-Bauer has not alleged that her self-reported mental health history as documented in the PSR is incorrect, only that it was "minimally documented," which seems to suggest that the PSR was

incomplete.  Regardless, if she thinks the PSR's documentation is wrong or incomplete, Ms. Janis-Bauer has not offered any facts to correct or complete it.

Further, the paragraph in the PSR concerning her mental and emotional health remained unchanged from the draft PSR to the amended draft PSR and, finally, to the final PSR.  If Ms. Janis-Bauer was dissatisfied with the characterization of her mental health history in the PSR, she did not object to it when she had the opportunity to do so, either in writing before the sentencing hearing or orally when she addressed the court at her sentencing hearing.

Because Ms. Janis-Bauer has not given the court any other *specific* information, the court is forced to speculate.  Even *pro se* movants must allege specific facts in support of their claims regarding counsel's allegedly deficient performance.  Saunders v. United States, 236 F.3d 950, 952-53 (8th Cir. 2001).  Because Ms. Janis-Bauer has offered no specific facts in support of her claim regarding Mr. Walter's allegedly deficient performance, she has not shown that Mr. Walter's representation was ineffective.

Second, Ms. Janis-Bauer has not shown that Mr. Walter's failure to develop mitigation evidence from her mental health and substance abuse histories was not trial strategy.  Strategic decisions are within the discretion of counsel, and the burden is on movants—like Ms. Janis-Bauer—to rebut the presumption that counsel's representation fell below an objective standard of reasonableness.  Henderson v. Norris, 118 F.3d 1283, 1287 (8th Cir. 1997). "Decisions about what types of evidence to introduce 'are ones of trial strategy, and attorneys have great latitude on . . . what sort of mitigating evidence they

54

can choose not to introduce.' " Wilson v. Greene, 155 F.3d 396, 404 (4th Cir.

1998) (quoting Pruett v. Thompson, 996 F.2d 1560, 1571 n.9 (4th Cir. 1993))

(finding counsel did not render ineffective assistance of counsel by reasonably

choosing not to develop a mental health defense at trial).

The government, referencing Mr. Walter's affidavit, argues that

Ms. Janis-Bauer has not rebutted the presumption that Mr. Walter's choice not

to seek an independent mental health evaluation was reasonable. Mr. Walter

states,

> Your affiant did help to arrange an alcohol evaluation from Lewis
> and Clark in Yankton and that evaluation was used and provided
> to court services for use at a detention hearing. Your affiant did
> not see any reason to obtain or request a mental health evaluation
> based upon his numerous contacts with [Ms. Janis-Bauer] or
> based upon the discovery provided by the government.

Docket No. 14 at p. 2, ¶ 4.

> In response to Mr. Walter's affidavit, Ms. Janis-Bauer stated,

> Although defense counsel attempts to gloss over this point in his
> affidavit, he is clearly not a mental health professional, and his
> handling of the case does not show that he performed with a
> degree of diligence that would lend any credence to that
> assertion. . . . His casual dismissal of Petitioner's mental health
> challenges [is] unavailing.

Docket No. 20 at p. 9. Ms. Janis-Bauer's reply leaves out what is perhaps the

most crucial factor in the court's analysis: it is her burden to rebut the

presumption that Mr. Walter acted reasonably, not the government's burden to

prove the representation was adequate. It is not enough to disparage him,

dismiss his statements, and repeat the assertion that he provided inadequate

representation. Instead, Ms. Janis-Bauer would need to provide facts, either

from the record or outside of it, showing *why* Mr. Walter's decision not to seek a mental health evaluation was unreasonable. Based upon the non-specific allegations Ms. Janis-Bauer has made, she has not disturbed the presumption that Mr. Walter acted reasonably.

Nor has Ms. Janis-Bauer shown that she was prejudiced by Mr. Walter's alleged failure to obtain an independent mental health evaluation. Although Ms. Janis-Bauer has alleged that "[d]efense counsel failed to offer mitigation evidence that showed that [she] would have benefited more from extensive mental health treatment rather than a long prison sentence" (Docket No. 20 at p. 9), she ignores that extensive mental health treatment was not on the table at her sentencing. The minimum sentence for her crime was, by statute, ten years in prison. Under no set of facts can Ms. Janis-Bauer show that Mr. Walter was ineffective for failing to secure for her an impossible sentence.

However, "any amount of [additional] jail time has Sixth Amendment significance." Glover v. United States, 531 U.S. 198, 203 (2001). Thus, Ms. Janis-Bauer could show prejudice by demonstrating a reasonable probability that mitigation evidence from an independent mental health evaluation would have resulted in her getting even a slightly lower sentence. But, a "reasonable probability" means showing that there is a substantial likelihood that the result would have been different. Strickland, 466 U.S. at 694. Ms. Janis-Bauer has not shown a substantial likelihood that she would have received a different sentence if Mr. Walter had presented unspecified evidence from an independent mental health evaluation, especially where the

court was aware of Ms. Janis-Bauer's criminal history, substance abuse history, and self-reported mental health history as documented in the PSR and sentenced her below the USSG guideline range.

Lastly, the cases Ms. Janis-Bauer cites in support of her position are distinguishable.  Ms. Janis-Bauer cites McCoy v. Wainwright, 804 F.2d 1169 (11th Cir. 1986), and Daniel v. Woodford, 428 F.3d 1181, 1202-10 (9th Cir. 2005) in support of her argument that Mr. Walter was ineffective when he failed to pursue a mental health evaluation.  In McCoy, the § 2254 petitioner alleged numerous, specific factual allegations in support of his claim that counsel was ineffective for failing to seek a competency hearing.  804 F.2d at 1197-98.  Some of those facts included that the petitioner had been examined and treated repeatedly by court-appointed psychiatrists and psychologists, three of whom counsel knew about and who also testified in separate criminal proceedings that, should the petitioner be released, he must continue treatment and medication, and was subsequently placed in the custody of a doctor and two therapists while attending a mental health treatment facility on an out-patient basis.  Id.  This level of specificity warranted an evidentiary hearing.  Id. at 1200.  Ms. Janis-Bauer's allegations of fact are considerably less specific.

In Daniel, counsel was found ineffective for failing to, after receiving significant preliminary evidence that the client "was schizophrenic and suffered from paranoia," neglected to pursue any follow-up or comprehensive evaluation.  428 F.3d at 1203-04.  In this case, the record reflects only the

2005 treatment for depression, which was over a decade before the criminal proceedings began.  Ms. Janis-Bauer has not alleged any other specific illnesses, diagnoses, or symptoms related to mental illness.  Nor has Ms. Janis-Bauer alleged what she claims to have reported to Mr. Walter about her mental health history which would have alerted Mr. Walter that further investigation was required.  Therefore, <u>Daniel</u>'s holding that counsel can be ineffective for failing to follow up on initial reports of mental illness does not apply here.

Ground three of Ms. Janis-Bauer's § 2255 motion does not plead "enough facts to state a claim for relief that is plausible on its face."  <u>Twombly</u>, 550 U.S. 544, 570 (2007).  Therefore, the court recommends that the government's motion to dismiss be granted as to ground three.

## F.   Ms. Janis-Bauer Has Not Alleged Enough Facts, Taken as True, To Entitle Her to Relief on Ground Four.

In ground four, Ms. Janis-Bauer alleges Mr. Walter was ineffective for failing to file an appeal on her behalf and then incorrectly advising her that, if she pursued an appeal, she could receive a higher sentence.[8]  Ms. Janis-Bauer asserts that Mr. Walter instructed her to dismiss the appeal.[9]

---

[8] Ms. Janis-Bauer also alleged this claim as part of ground two.  The court considers it here as part of ground four.  <u>See</u> pp. 21-22, <u>supra</u>.

[9] Ms. Janis-Bauer also alleged that Mr. Walter told her he had not been paid to file an appeal.  Mr. Walter was retained by Ms. Janis-Bauer and, until the Eighth Circuit appointed him to handle the already-filed appeal, he was not court appointed.  Ms. Janis-Bauer has not supplied the court with her retainer agreement with Mr. Walter.  Therefore, the court cannot assess whether Mr. Walter was under any contractual obligation to pursue an appeal on Ms. Janis-Bauer's behalf.  Ultimately this is a non-issue because Ms. Janis-Bauer was able to file her notice of appeal and Mr. Walter represented her on appeal.

58

Ms. Janis-Bauer and Mr. Walter have given contradictory statements about the advice Mr. Walter gave Ms. Janis-Bauer about the appeal. However, the court is concerned only with Ms. Janis-Bauer's statements for the purposes of deciding the government's Rule 12(b)(6) motion. This is because, to survive the motion to dismiss, Ms. Janis-Bauer must allege enough factual matter, taken to be true, to support the court's conclusion that she has a valid claim. See Twombly, 550 U.S. at 556.

In her affidavit, Ms. Janis-Bauer states,

Affiant was unhappy with the results of the plea agreement and the representation of defense counsel during the sentencing hearing, and asked that he file an appeal, and made it clear that she wished to appeal the sentence, and also failed to offer an objection to the gun enhancement, despite Affiant's requests[.] [A]lthough he filed the appeal, defense counsel inaccurately stated to petitioner that she could receive a longer sentence by pursuing it, and . . . instructed her to dismiss it.

Docket No. 11 at p. 2, ¶¶ 10-11.

Ms. Janis-Bauer's allegations, taken as true, are not enough to show that Mr. Walter's advice about the possibility of receiving a longer sentence constituted deficient performance. Although Ms. Janis-Bauer cites several cases discussing *per se* ineffective assistance of counsel in the context of counsel's failure to file an appeal, those cases are distinguishable because an appeal *was* filed in this case. Therefore, the court assesses Ms. Janis-Bauer's claim of ineffective assistance according to the same two-part Strickland standard described at length above.

"When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation

59

fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 687-88.  To state a valid claim for ineffective assistance of counsel, Ms. Janis-Bauer would first need to allege enough factual information that, taken as true, showed that Mr. Walter's representation fell below an objective standard of reasonableness.  For the following reasons, the court finds Ms. Janis-Bauer has not met this pleading requirement.

While Ms. Janis-Bauer is correct in stating that the appeal waiver in her plea agreement does not preclude her from appealing the length of her sentence (<u>Garza v. Idaho</u>, 586 U.S. ___, 139 S. Ct. 738, 749-50 (2019)), her allegations of ineffective assistance of counsel have nothing to do with whether Mr. Walter advised her she could not appeal because she had waived that right.  Instead, the alleged conduct Ms. Janis-Bauer complains of is that Mr. Walter told her she could receive a longer sentence if she pursued the appeal.

First, Mr. Walter's alleged advice that Ms. Janis-Bauer could receive a higher sentence if she appealed, while not strictly correct, does not fall below an an objective standard of reasonableness because it accurately reflected the reality Ms. Janis-Bauer faced considering the government's possible Rule 35 motion. The Supreme Court in <u>Greenlaw v. United States</u> held that a court of appeals may not, on an appeal undertaken by a defendant, increase that defendant's sentence.  554 U.S. 237, 252-54 (2008).  Therefore, Ms. Janis-Bauer could not, absent an appeal or cross-appeal by the government (neither of which were filed), receive a higher sentence just for pursuing her appeal. But this cut-and-dry analysis does not account for ██████████████

████████████████████████████████████████████████████

███████████████████████████████████

When Ms. Janis-Bauer entered into her plea agreement, she agreed to waive her right to appeal any non-jurisdictional issues, apart from an upward departure from the USSG at sentencing.  While Ms. Janis-Bauer retained, as a constitutional matter, the ability to appeal the length of her sentence, she was still subject to the terms of the plea agreement she voluntarily entered.  In consideration for Ms. Janis-Bauer's guilty plea, appeal waiver, █████████ ███████ the government not only gave a three-point reduction to the USSG offense level, ████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████

████████████████████

Turning to the post-sentencing timeline of Ms. Janis-Bauer's case, it is clear that, even taking as true that Mr. Walter gave the allegedly deficient advice, the advice did not fall below an objectively reasonable standard of competence.  On May 6, 2019, the court sentenced Ms. Janis-Bauer to 210 months' imprisonment.  On May 15, 2019, Ms. Janis-Bauer filed or caused to be filed her notice of appeal.  On May 21, 2019, Ms. Janis-Bauer wrote to the

court, stating, "Would like to withdraw appeal #19-2022, I misunderstood[.]"
CR Docket No. 106.  After appointing Mr. Walter to represent Ms. Janis-Bauer
in the appeal on May 22, 2019, the Eighth Circuit granted Ms. Janis-Bauer's
voluntary dismissal on May 24, 2019.



Thus, the advice Ms. Janis-Bauer alleges Mr. Walter gave on the subject
is correct.



Because Ms. Janis-Bauer has not alleged any facts that, taken as true, entitle her to relief, the court recommends the government's motion to dismiss her fourth ground be granted.

**G.    Ms. Janis-Bauer's Fifth Ground Does Not State a Valid Claim for Relief.**

In her fifth and final ineffective assistance of counsel claim, Ms. Janis-Bauer alleges Mr. Walter's representation was constitutionally deficient because he failed to present enough character witnesses and other mitigation evidence at sentencing.[10]   In her affidavit, Ms. Janis-Bauer avers that, "despite [her] requests, [Mr. Walter] said that it was unnecessary to call character witnesses who could have testified that [she] was a productive member of society, despite [her] substance and mental health problems."  Docket No. 11 at p. 1, ¶ 9.

---

[10] Ms. Janis-Bauer, in heading number five of her memorandum, also states that Mr. Walter was ineffective when he failed to object to the conditions of release.  However, Ms. Janis-Bauer does not identify what conditions of release she thinks Mr. Walter should have objected to or on what grounds his objections should have been based.  Therefore, to the extent Ms. Janis-Bauer's claim concerns the conditions of release, it is too non-specific to warrant relief.

In the context of ineffective assistance of counsel claims, "complaints of uncalled witnesses are not favored . . . because allegations of what the witness would have testified [to] are largely speculative.  Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2002).  "[T]he petitioner ordinarily should explain . . . with some precision, the content of the testimony [the witness] would have given." Lawrence v. Armontrout, 900 F.2d 127, 130 (8th Cir. 1990) (quotation omitted).

Here, three of Ms. Janis-Bauer's friends and family addressed the court at the sentencing hearing and attested to her good character and that she was reliable when sober.  Additionally, Mr. Walter submitted letters from three other friends and family in support of Ms. Janis-Bauer for the court to consider before sentencing.  One letter remarked that Ms. Janis-Bauer could "become a very productive person in the community once again."  CR Docket No. 91 at p. 1.  To the extent Ms. Janis-Bauer's claim can be read to assert that Mr. Walter should have called character witnesses to testify instead of soliciting letters, Ms. Janis-Bauer has not shown that calling her supporters to testify in person as opposed to submitting their letters would have favorably influenced or changed the outcome of her sentencing.  Lawrence, 900 F.2d at 130.  See also Bucklew v. Luebbers, 436 F.3d 1010, 1020 (8th Cir. 2006) (counsel not ineffective for failing to call five friends and family members as witnesses during penalty phase of trial when their testimony would have been cumulative and subject to damaging cross-examination).

Ms. Janis-Bauer has not specified what new information would have been conveyed by additional witnesses at the sentencing hearing that was not

already presented to the court at the sentencing hearing or through letters in support. The sentiment that Ms. Janis-Bauer could, despite her substance abuse issues, be a productive member of society was already communicated to the court. The only other allusion Ms. Janis-Bauer makes to the content of the witness testimony is that it would have shown that she would benefit more from mental health treatment than incarceration. This is too vague and general a claim to warrant relief. What's more, Ms. Janis-Bauer has not identified the witnesses she argues Mr. Walter should have called. See Spillers, 802 F.2d at 1010 (petitioner's vague and conclusory ineffective assistance claims were properly dismissed because petitioner did not allege any facts or specifics to identify how his counsel was ineffective). Therefore, because Ms. Janis-Bauer has not shown how the potentially cumulative and unspecified testimony of unidentified character witnesses would have affected her sentence, she has not shown prejudice under Strickland. The court recommends that the government's motion to dismiss as to ground five be granted.

## H.    No Evidentiary Hearing is Warranted

"While '[a] petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and the records of the case conclusively show that [they are] entitled to no relief,' no hearing is required 'where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based.' " New, 652 F.3d at 954 (quoting Anjulo-Lopez v. United States, 541 F.3d 814, 817 (8th Cir. 2008)).

65

"A district court may deny an evidentiary hearing where (1) accepting the petitioner's allegations as true, the petitioner is not entitled to relief, or (2) 'the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.' " Guzman-Ortiz v. United States, 849 F.3d 708, 715 (8th Cir. 2017) (quoting United States v. Sellner, 773 F.3d 927, 929-30 (8th Cir. 2014)).

The Eighth Circuit held no evidentiary hearing was necessary in Guzman-Ortiz because Guzman-Ortiz mischaracterized the record in his challenges to his lawyer's representation during closing argument and sentencing.  Id.  Therefore, "no further factual development of his claims was necessary" before denying those claiMs.  Id.

The district court's denial of an evidentiary hearing in Adams v. United States, 869 F.3d 633, 635-36 (8th Cir. 2017), was affirmed.  Adams claimed his lawyer just told him to answer all the district court's questions at the plea hearing "yes."  Id. at 634.  Adams also claimed he did not understand the plea documents or the plea proceeding, his lawyer never explained them to him, he only signed the documents because his lawyer told him to, and his lawyer blindly urged him to plead guilty.  Id.  Adams' lawyers submitted affidavits that were congruent with the record, but were not consistent with Adams' affidavit submitted in his § 2255 motion.  Id.  The district court denied the § 2255 motion without a hearing.  Id.

The Eighth Circuit said Adams' contention that his lawyer said to answer all the judge's questions "yes" was belied by the transcript of the plea hearing

where he answered multiple questions "no." Id. at 634-35. Because Adams chose between "yes" and "no" answers when answering the court's questions, the court was permitted to hold Adams to his sworn testimony at the plea hearing that he had read the plea documents, that they were accurate, that he had discussed them with counsel, and that he understood them. Id. at 635-36. Thus, it was not an abuse of discretion to deny Adams an evidentiary hearing. Id.

The same conclusion applies equally in Ms. Janis-Bauer's case. Her allegations in her § 2255 motion are either too conclusory to warrant relief, or they are precluded by her constitutionally valid plea, or she has failed to demonstrate prejudice. While there are several conflicts between her allegations and her counsel's responses thereto, where such conflicts exist, Ms. Janis-Bauer's allegations are "contradicted by the record, inherently incredible, or conclusions rather than statements of fact.' " Guzman-Ortiz, 849 F.3d at 715. Therefore, the court recommends no evidentiary hearing be held.

## CONCLUSION

Based on the foregoing facts, law and analysis, this magistrate judge respectfully recommends granting in its entirety the government's motion to dismiss [Docket No. 16] and dismissing Ms. Janis-Bauer's § 2255 motion without holding an evidentiary hearing.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the district court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED  October 2, 2020

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge